By the Court.
Was the Industrial Commission guilty of gross abuse of discretion in denying the relator’s application for an additional award of compensation?
The sole claim of the relator is that his employer, the Toledo Plastics Company, violated a specific safety requirement in failing to provide a proper guard for the machine in use at the time of the injury.
Section 35 of Article II of the Constitution of Ohio provides in part that the Industrial Commission or board “shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final; * # *. When it is found, upon hearing, that an injury, disease or death resulted because of such failure by the employer, such amount as shall be found to be just, not greater than fifty nor less than fifteen per centum of the maximum award established by law, shall be added by the board, to the amount of the compensation that may be awarded on account of such injury, disease, or death, and paid in like manner as other awards; * * *.”
The relator relies upon several statutes as specific safety requirements.
The first of these is Section 871-15, General Code, which provides that every employer “shall furnish and use safety devices and safeguards * *
The second is Section 871-16, General Code, which *104 requires that no “such employer shall fail to furnish, provide and use safety devices and safeguards * * V’
However, in the case of State, ex rel. Stuber, v. Industrial Commission, 127 Ohio St., 325, 188 N. E., 526, this court decided these identical questions. In discussing these sections Judge Bevis stated:
“There remains only the contention that the company was guilty of violation of Sections 871-15 and 871-16, General Code. The controversy concerning general as opposed to specific requirements occupied the attention of this court before the language of Section 35, Article II, of the Ohio Constitution was amended in 1923 so as to substitute the words ‘specific requirement’ for the words ‘lawful requirement.’ * * *
“So far as this case is concerned, that amendment determines the controversy. In our opinion Sections 871-15 and 871-16, General Code, do not set up specific requirements, and are therefore not vital to the question before us.”
The remaining statute upon which the relator relies is Section 1027, General Code, which reads in part as follows:
“The owners and operators of shops and factories shall make suitable provisions to prevent injury to persons who use or come in contact with machinery therein or any part thereof as follows: * * *
“They shall guard all saws, wood-cutting, wood-shaping and all other dangerous machinery. * *
It is apparent that this section is as general and indefinite as the preceding two sections and involves the same difficulty that was discussed in the following-comment in the per curiam opinion in the case of State, ex rel. Rae, v. Industrial Commission, 136 Ohio St., 168, 24 N. E. (2d), 594:
“What specific things did Section 87 [Code of Specific Safety Requirements adopted by the Industrial *105 Commission of Ohio February 14, 1931] require the employer to do? The section provides that ‘It shall be the duty of the operator to see that all men employed in the tunnel are supplied, at all times, with such timbers, other materials, equipment and supplies as are necessary * * *.’ What timber, material, equipment or supplies? Who is to determine the necessity? Obviously, determination is left to the judgment of the employer. The constitutional provision does not impose a penalty for an error in judgment committed by an employer, but it does provide a penalty for violation of a specific requirement. Section 87 does not impose a specific requirement but, vests in the employer the power to exercise his judgment with respect to determining the question of necessity. The specific thing to be done is left to the judgment of the employer, as is also the method to be employed. Such a section cannot be said to be a specific requirement. It is the duty of the commission to prescribe such specific safety requirements as will forewarn the employer and establish a standard which he may follow. The section here involved is clearly not a ‘specific requirement.’ ”
Finally, the relator relies upon the following provision of Section 16 of the Code of Specific Safety Requirements, relating to power presses:
“Power Presses — Guarding
“Except where the operator uses both hands to handle stock which is of such size that it is unnecessary to put his hand in the danger zone, every press in use shall be so constructed, or effective safety devices shall be provided, that will prevent the hand of the operator from being in the danger zone at the time of the operation. Acceptable methods are: * * *
“(c) Automatic (feed) presses * # # by — * * *
“ (3) Movable or pull guard * *
*106 However, by its express terms this section relates to power presses alone, and the relator is confronted with the inescapable difficulty that the Industrial Commission, basing its conclusion on the evidence to that effect, specifically found as a factual matter that tbe machine was a hydraulic and not a power machine. It is conceded that Sections 42 and 43 of the Code of Specific Safety Bequirements do not require guards for hydraulic machines. Inasmuch as the decision is based upon the evidence in the record, this court cannot hold the commission guilty of gross abuse of discretion in finding that the Toledo Plastics Company was not guilty of violating a specific safety requirement.
The writ of mandamus must be denied.

Writ denied.

Weygandt, C. J., Zimmerman, Bell, Williams, Turner, Matthias and Hart, JJ., concur.